move now to the second argument on the calendar that's the United States versus Talada. Let me just make sure council is present. Mr. Ovsevich. Yes, your honor. Am I pronouncing your name right? Ovsevich will work, yes. Ovsevich, all right, thank you. And Ms. Lee, you can't get much easier than that. Good morning. Good morning, your honors. Good morning. Okay, so Mr. Ovsevich, you have got 10 minutes total, but you reserve two minutes for rebuttal. So the first eight minutes are yours. Thank you, your honor. May it please the court. My name is Jay Ovsevich and I represent the appellant Chad Talada in this case. The issue before the court is whether Mr. Talada's guideline sentence, which was based on the application of USSG 2G 2.2 is can lead to unreasonable sentences that are inconsistent with 18 U.S.C. section 3553. Rejecting Mr. Talada's arguments at sentencing, the district court takes the position that this court's holdings in Dorovian score should be applied only to offenders sentenced under 2G 2.2 who have no prior offenses. We believe that this is an incorrect interpretation of Dorovian's guidelines and requires this court to provide additional guidance on how Dorovian should be applied when sentencing defendants under this guideline range. In Dorovian, the court recognized that 2G 2.2 is fundamentally different from most other sentencing guidelines and can lead to unreasonable sentences that are inconsistent with what section 3553 requires. This is because when deferred to Congress rather than using an empirical approach as was done with other sentencing guidelines. The guideline results in sentences that concentrates offenders at or near the statutory maximum sentence. Mr. Talada's maximum statutory sentence was 40 years, 480 months imprisonment. His guideline range comes close to that of 324 to 405 months imprisonment. Isn't that in significant part because plus five levels for having engaged in actual conduct that involve children? Well, yes, your honor. This is why why that's not that's not one of the factors that was cited in Dorvay as being, you know, practically inherent in any child pornography offense. That's something that's doesn't always show up in these cases. And that is specific to your client, isn't it? Yes, your honor. And in fact, that does fit in with our argument because one of the reasons why his guideline range goes up so high is not just because of the factors that distinguish him from some of the other cases, but you still have the application of the factors that are present in almost all cases that are inherent to the offense itself. Dorvay was concerned. But you see, the problem is the as I as I read the transcript and you can correct me if I'm over reading or misreading it. I thought that the district court here recognized the Dorvay case said, yeah, that's that's true. But in this case, we have a factor that he has a prior record, which is a distinguishing factor. And we have this factor of that plus five. And so that means that this is a case where I think the sentence is appropriate. Now, maybe it isn't. I mean, maybe you want to argue that are arguing that this is substantively unreasonable, taking all the facts and circumstances of your case into account. But I think isn't it hard to say the district court ignored the guidance from from this court? No, your honor. In fact, the court followed the guidance set forth in Darby. The court may have still applied the five level enhancement. But the question should have been whether or not the court should have applied the enhancement for a prepubescent because images involved a prepubescent minor, which has been present in Darby. They noted in 95 percent of the cases. Yes, but we've never said that you can't that the guidelines can't be calculated using these factors. The guidelines are what the guidelines are. The question then become whether they're good guidelines, bad guidelines, stupid guidelines. Those are the guidelines. And you get a number. And then after you get that number, it's only advisory. And the district court considers the facts and circumstances in the case to decide whether that number or some other number should be applied. Right. But when when calculating the guidelines and once you get the calculation, the court should then, I think, based upon what Darby is teaching us, look into the effect of what these offense characteristics that are applied in almost all the cases and take that into account and actually probably, I would say, disregard those factors, those guidelines. Well, you would say, have we ever said that in all the many cases which are, you know, there's a lot of and this kind of argument is routinely made. Have we ever said that these factors should be the district court has to say, I'm basing the sentence on what the guidelines would be if you totally ruled out those those factors that are typical of child pornography cases. This case gives you the opportunity to do just that and to say that your honor. I think I'm going to interrupt, but I just want to make clear. You're not making a substantive unreasonableness argument, are you? Or are you? We're making primarily a procedural and reasonableness argument, but tied into that would become substantive reasonableness as well. But we're really focusing on the procedural reasonableness. So there are two different arguments. You're making both? Yes. The substantive reasonableness underlies the other argument, but we are focusing primarily on the procedural reasonableness, your honor. So if we look at in Darvey, if we look at the statistics put out by the Sentencing Commission, we know that in the majority of cases, you know, roughly 95% of the cases, the offense characteristic for images involving a prepubescent minor is applied. We know that in approximately 97% of the cases, the offense characteristic for use of a computer is applied. We know in over 70% of the cases, the offense characteristic for sadistic or masochistic conduct is applied. And the court, once it has calculated guidelines, should take that into effect and not focus on those guidelines or remove them from the calculations. Now, there are other guidelines within 2G2. We're not saying to throw the baby out with the bathwater. There are other characteristics, offense characteristics in 2G2.2 that do distinguish each individual defendant and allows for an individualized sentencing. And these could still be applied by the court, such as whether or not the image's distribution was involved, which would be a two-level enhancement. Whether the pattern enhancement, the five-level enhancement that you spoke about, Your Honor, whether or not that should be applied. Of course, there would be enhancements based upon the number of images. So this is the direction that we need to go in terms of determining whether or not the guidelines are calculated correctly. And if the court, once it calculates the guidelines, taking these into consideration, still feels that the possible sentencing range is not appropriate, there is still arrows in the judge's quiver of what the court can do. There is always a possibility that the court could apply a variance and increase the sentence that way as well. So we're not saying get rid of the guideline completely, but we're saying that based upon what Darvey is teaching us about offense characteristics applying in the majority of cases, that not every characteristic should be applied. All right. Mr. Oksiavich, by my clock, we're over. So you've reserved a couple of minutes for rebuttal. We'll now hear from Ms. Lee, but thank you. Thank you, Your Honor. Okay, and Ms. Lee, I'll keep track of time and I'll let you know when you're getting close, but I don't know how good your sort of internal clock is. Hopefully, the clock will get back online in a minute, but go ahead. Thank you. I'll start a timer for myself as well. Good morning, everyone. May it please the court. My name is Tiffany Lee and I represent the United States in this matter. The main question here is whether or not the district court sentence of 30 years is substantively and procedurally reasonable. And while 30 years is a significant and serious length of time, when considered against the section 3553A factors, which the district court weighed, and in consideration of who Mr. Tolada was and what he presented, this court should affirm the sentence. Mr. Tolada, this was the incident offense for which he was sentenced was his third offense involving the sexual exploitation of children that occurred in the span of 10 years, beginning in 2002, he first received his first conviction for attempted sexual abuse of a minor involving a three-year-old. And then two years later, while he was on probation for that offense, he committed the offense of possession of child pornography. It was a New York state violation. And then in 2009, he committed the offense of failure to register. In addition to all this, we have all the violations of supervised release that Mr. Tolada engaged in beginning when he was on release, I think in 2011. And in each instance of the violation, it involved his inability really to prevent himself from being in contact with children. His first violation involved his being in contact with a two-year-old child in which the child was sitting on his lap. It was something that he didn't disclose to his sexual offense treatment provider. And that resulted in, I believe, a six-month sentence for the violation of supervised release. He then violated supervised release again when he was viewing child erotica on his mother's Kindle. And in fact, when he was arrested for a violation of supervised release, again, for failure to disclose contact with children and failure to disclose that he had been using the internet on unmonitored devices. So this is not a DOR-V case. And, you know, from what I'm hearing from Mr. Avciavich, it sounds like he's asking for a weird sentencing guideline formula that only applies to 2G2.2 in terms of not counting necessarily those numbers, certain of the specific offense characteristic enhancements depending on the case. But that's not what the sentencing statute requires a district court to do. The district court calculates the guidelines and then looks to the section 3553A factors. Can I ask you to pause for a second? Sure. I just want to make sure I've lost the screen for Judge Jacobs. But I'm here. Jacobs, are you there? I'm here. I hear you. I hear you all. And I've lost the screen for myself as well. But I'm here. Are you able to see the lawyers at all? I see the lawyer. I see I see my colleagues. The only thing I don't see is myself, but I'll live with that. We'll suffer, but I think we'll probably go on anyway. Sorry, I just wanted to make sure. No problem. I certainly miss Judge Jacobs absence right here. I will say that, you know, this is not a DOR V case. I think what this court was instructing in DOR V was, yes, you've made these guideline calculations and you have these numbers that typically will increase rapidly because most cases do involve these specific offense characteristics. However, I believe that this court's caution with regards to DOR V to sentencing courts is pay attention then when you're looking at Section 35 by 3A factors. Is this a first time offender? How many like really truly how many images was he have? Did he have? What were the circumstances of his offense as opposed to just relying on the guidelines and saying, well, you know, it's a guidelines of sentence. It should be reasonable. Here, though, this court did do those did make those evaluations, discussed DOR V, discussed 4, which was also raised by Mr. Tolada below, and basically said, Mr. Tolada is a sexual recidivist. He poses a risk. And the reason why he crafted the sentence, which was actually in the middle of the guideline range, was because the district court felt that it was necessary to protect the public from further crimes by Mr. Tolada. And this is given everything, his history, his record. Mr. Tolada's record amply demonstrates that he had an inability to stop himself from committing crimes against children. Accordingly, viewing this record against the very highly deferential standard that this court normally employs when it's reviewing sentences, the sentence of 30 years is neither shockingly high nor unsupported by the law. And unless this court has any further questions, the government rests on its brief. Okay. Any further questions? Judge Jacobs, I see you again. Here. No questions. All right. Okay. Thank you very much, Ms. Lee. We'll go back to Mr. Obstiavich for two minutes of rebuttal. Thank you, Your Honor. Just a few points that I would like to make in response to the government. Yes, Mr. Tolada does have a high criminal history. This was taken into account by the criminal history category. It was also taken into account by the pattern enhancement that was applied. And we're not arguing that the pattern enhancement may not have been appropriate here. Yes, there were violations of supervised release. And by the suggestions that we're making in the direction we think that the court should go in the future, the courts would have an opportunity to address this if they felt that it needed to be taken into account. I'm sorry, Your Honor? No, I don't think anyone would speak. Go ahead. There was something that I caught. I'm sorry, Your Honor. So the courts can... It's just not necessarily going to be within the calculations of the guideline range. The government has also said that... Mr. Obstiavich, I guess I'm just having trouble understanding exactly what you think the district court should have done. Because the district court did take these factors into account. The district court relied specifically on the criminal history and the violations of supervised release and what the judge characterized as an inability to comply with supervised release as the reasons why he thought this sentence was appropriate. Are you saying that he should have said first, I am disregarding the following sentencing guideline calculations and throwing those out and then upping the sentence back because of this, as opposed to just saying I've taken everything into account and based on these particular things that I'm seeing as important in this case, this is the sentence I'm giving? We've never required judges to do that kind of mental gymnastics or verbal gymnastics, have we? It's a question of properly calculating the guidelines. And I think, including within the guidelines, calculations for prepubescent minor, which are applied in... That's where I think you are totally misreading Dorvay. What we said in Dorvay was these guidelines, when properly calculated, sometimes will lead you to inappropriate places. We did not say these guidelines are illegitimate or to be disregarded these things. That's not what Dorvay says at all. Isn't that what you're just telling me? I believe that's exactly what Dorvay is saying, because Dorvay is pointing out that these are the problems with the 2G 2.2 guidelines that it takes into account factors that are part of the offense itself. And that's where we start to have problems in calculating the guideline range. And the question becomes, what should have been the starting point? Did Court ultimately determine that a guideline sentence, a sentence within the guideline range was appropriate? But the question is, what was the appropriate guideline range to start? He did not decide... He decided that this sentence was appropriate, rightly or wrongly. He didn't give a guideline calculation. He gave a specific sentence that happens to be within the guideline range. But the sentence is actually, it's not the bottom of the guidelines or the top of the guidelines. It's the sentence that the judge thought was appropriate. We now have lost Judge Jacobs, I think. Judge Jacobs, are you there? Oh, let's pause and get him back. This happened yesterday, but yesterday it happened, fortunately, before we began arguments. But fortunately, it's only the very last bit that he lost, if any. So let's just sit tight for a minute. So okay. I'm told we're working on it. And Judge Jacobs may just join telephonically in a minute. Ah, there he is. Judge Jacobs? I'm now back. I can hear you. When did we lose you, approximately? What's the last thing you remember? It was the discussion about Dorvey. And most specifically, it was about whether the court had done all the calculations and the extent to which you considered Dorvey. All right. So in the rebuttal? Yes, it was in the rebuttal. Maybe just you'll ask you for a few seconds then. Okay. So, Mr. Kociovic, if you want to sort of but I think we're pretty close to wrapping up. I'm going to try to change the setting here so I can see everybody at once. And there you are. Great. Okay. Mr. Kociovic. I'll try to answer Judge Lynch's question that he had for me, which was whether or not Dorvey is teaching us that these offense characteristics apply in the majority of the cases, whether or not they should be applied. And I would say that they should not be applied because they really go to the conduct of the offense. And the court, when calculating guidelines, should take that into consideration. And from there, then base what the appropriate guideline range is. And if the appropriate guideline range does not adequately address what the offense should be, then the court does have the authority to vary the sentence from the guideline range. And that is nothing unusual from what courts are required. But that's different than what Dorvey says and different than what we have ever said, right? And as I said earlier, Your Honor, this would give you the opportunity to say that. And what we're asking you to do in summation is to vacate the judgment. All right. Thank you, Mr. Kociovic. So what we're asking you to do- And thank you, Ms. Lynch. No, I was about to wrap it up. I think we've gone way over the two minutes. Thank you both for the arguments. Thank you both for your patience. I'm sorry we had a few glitches there, but I still think it was worth doing this with video. It adds, I think, to your ability to see our expressions and to interact with the panel. So thanks very much. We'll reserve decision.